UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

BRIAN STUBBS,

                  Defendant.

------------------------------------X

12 Cr. 671 (RWS)

SENTENCING OPINION

**Sweet, D.J.**


       On April 12, 2013, Brian Stubbs, ("Defendant" or "Stubbs") pled guilty to Count 2: Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951, a Class C felony. For the reasons set forth below, Stubbs will be sentenced to a term of 37 months' imprisonment to be followed by three years' supervised release. Defendant will also be required to pay a special assessment of $100.


**Prior Proceedings**


       On August 29, 2012, Stubbs was named in a three-count Indictment 12 CR 671 (RWS) in the Southern District of New York. Count 1 charges that from at least July 2012 through August 1, 2012, in the Southern District of New

1

York and elsewhere, Stubbs, co-defendant Julius C. Barnes ("Barnes"), co-Defendant Kean Chambers ("Chambers"), co-defendant Kaison Gillespie ("Gillespie"), and others, agreed to commit an armed robbery of people suspected of possessing narcotics and cash in an apartment in New York, NY. Count 2 charges that on August 1, 2012, in the Southern District of New York and elsewhere, Barnes, Chambers, Stubbs, Gillespie, and others, participated in the attempted armed robbery of people suspected of possessing narcotics and cash in an apartment in New York, NY. Count 3 charges that on August 1, 2012, in the Southern District of New York and elsewhere, Barnes, Chambers, Stubbs and Gillespie, during and in relation to the attempted robbery charged in Count 2, possessed and carried a firearm in furtherance of that crime.

On April 12, 2013, Stubbs pled guilty to Count 2 Indictment 12 CR 671 (RWS) only.

Stubbs's sentencing is scheduled for March 20, 2014.

**The Sentencing Framework**

2

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

    (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)   the need for the sentence imposed —

        (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)   to afford adequate deterrence to criminal conduct;

        (C)   to protect the public from further crimes of the defendant; and

        (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)   the kinds of sentences available;

    (4)   the kinds of sentence and the sentencing range established for —

        (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the

3

> guidelines . . .;
>
> (5) any pertinent policy statement . . . [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Stubbs's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that document.

In late June 2012, a confidential source ("CS-1") spoke to co-defendant Barnes about a potential robbery of cocaine shipments that would be arriving in Manhattan from Colombia. On July 2, 2012, CS-1, another confidential source ("CS-2") and Barnes met on a street in Manhattan. CS-2 was equipped with a video-and-audio-recording device during this meeting. Based on the review of the video and audio recording made by CS-2, it was discovered that CS-1 told Barnes that CS-2 was expecting a multi-kilogram shipment of cocaine from Colombia. CS-2 told Barnes that when the cocaine arrived, CS-2 would meet an unknown individual at a location in Manhattan to receive the drugs and arrange the sale of the drugs to another party for approximately $300,000.

Barnes told CS-2 to call him when the cocaine arrived, and then Barnes and his associates would come to the location and steal the drugs and money by force. Barnes explained that he would commit the robbery with his brother and/or cousin; Barnes agreed to split the stolen money with CS-2 immediately following the robbery. Barnes also asked CS-2, "Is it a problem if the people in the house die?"

Barnes stated that he used to commit drug

5

robberies, but that Barnes' main business now was selling kilograms of cocaine. Barnes explained that he would meet CS-2 immediately after the robbery and show CS-2 the stolen kilograms of cocaine. Barnes agreed to give CS-2 a percentage of the profit made from the sale of each kilogram of stolen cocaine.

On August 1, 2012, at approximately 8:15 p.m., CS-2 met Barnes in the vicinity of W. 207th Street and Seaman Avenue in Manhattan. Law enforcement officers surveilled this meeting and observed Barnes arriving on foot. During this meeting, CS-2 informed Barnes that that the robbery would take place at a building in the area where they were meeting (the "Location"). CS-2 told Barnes to follow CS-2 to the Location. After this meeting, other law enforcement officers observed Barnes leave the meeting with CS-2 and enter a van (the "Van") located in the vicinity of Isham Street and Seaman Avenue in Manhattan.

CS-2 and Barnes then arrived at the Location. A marked NYPD vehicle then arrived at the Location and pulled in front of the Van, at which point four males jumped out of the Van and ran away from the Location. Law enforcement officers chased the four males and ultimately apprehended

6

and arrested them. The four males were subsequently identified as Barnes, Chambers, Gillespie and Stubbs.

Upon a search of the Van, the following items were recovered: a loaded .45 caliber Hi-Point handgun; a loaded .22 caliber revolver; a loaded 9mm caliber Ruger handgun with a defaced serial number; two bulletproof vests; bleach; ammonia; latex gloves; zip ties; duct tape; an ASP baton; and a riding crop.

After waiving his Miranda rights, Chambers stated to law enforcement agents that on August 1, 2012, his cousin, Gillespie, Barnes and Stubbs agreed to meet in the Bronx, NY. Chambers agreed to attend that meeting as well.

Barnes, Gillespie, Stubbs and Chambers drove to meet CS-2 on August 1, 2012. On their way to meet CS-2, Barnes stopped at a store to buy bleach and ammonia. When Barnes, Gillespie, Stubbs and Chambers arrived at the Location in the Van and observed the NYPD vehicle, Gillespie yelled, "Run, fucking run, don't get caught with anything."

Barnes, Gillespie, Stubbs and Chambers were

arrested on August 1, 2012. There are no applicable role adjustments. As the robbery was a jointly undertaken activity between Barnes, Stubbs and Gillespie, and because firearms were an element of the offense, only Barnes, Stubbs and Gillespie are responsible for the possession of the firearms. Chambers was unaware of the fact that the others were planning a robbery of drugs or that they possessed firearms.

**The Relevant Statutory Provisions**

For Count 2, the maximum term of imprisonment is 20 years, pursuant to 18 U.S.C. § 1951.

For Count 2, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

For Count 2, the Defendant is eligible for not less than one nor more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the following must be imposed as a condition of probation unless extraordinary

8

circumstances exist: a fine, restitution, or community service, pursuant to 18 U.S.C. § 3563(a)(2).

For Count 2, the maximum fine is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2013 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility and term of imprisonment:

Count 2 charges Defendant with Attempted Hobbs Act Robbery, a violation of 18 U.S.C. § 1951. The Guideline for a violation of 18 USC 1951 is § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a).

Because a dangerous weapon was possessed during the instant offense, the offense level is increased by

9

three levels pursuant to § 2B3.1(b)(2).

Pursuant to § 2B3.1(b)(6), a one-level increase in the offense level is warranted because the taking of a controlled substance was the object of the offense.

Based solely Defendant's plea allocution, Defendant has shown recognition of responsibility for the offense. Because of the Defendant's timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to § 3E1.1(a) and (b), the offense level is reduced three levels.

According to the PSR, the total offense level is 21.

As outlined below, the Defendant has two adult criminal convictions.

On June 10, 1995, Defendant was sentenced for unauthorized use of a vehicle without owner consent in the Manhattan Criminal Court in New York, NY. Defendant was

10

sentenced to 10 days' imprisonment. Pursuant to § 4A1.2(e)(3), this conviction warrants zero criminal history points.

On January 25, 2010, Defendant was sentenced for attempted assault in the third degree in the Brooklyn Criminal Court in New York, NY. According to the NYPD's arrest report, on September 7, 2008, at 12:20 p.m., the Defendant was observed operating a gray 2001 Honda motorcycle traveling eastbound on the Belt Parkway in the vicinity of the Mill Basin Drawbridge in Brooklyn. Officers on foot attempted to conduct a traffic stop of the Defendant when he accelerated toward the officers, striking them and causing injuries to both officers. The Defendant then fled at a high rate of speed in an attempt to escape. The Defendant was arrested on the same day, at 4:14 a.m., inside of 1844 Brooklyn Avenue, Brooklyn, NY. Defendant was sentenced to time served (87 days' imprisonment) and $200 fine (paid in full). According to the PSR, and pursuant to § 4A1.1(b) and § 4A1.2(e)(2), this conviction warrants two criminal history points.

According to the PSR, the criminal convictions above result in a subtotal criminal history score of two.

11

According to the sentencing table at Chapter 5, Part A, two criminal history points establishes a Criminal History Category of II.

The parties entered into a written plea agreement which stipulated to a total offense level of 21 and criminal history points of 1, which would result in a Criminal History Category of I. The parties agreed that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth in the plea agreement is warranted.

While the PSR calculated a total of two criminal history points compared to the plea agreement's one criminal history points, the parties agreed to a criminal history points of 1 in the plea agreement. Accordingly, a Criminal History Category of I will be used to assess the Guideline sentence.

Based on a total offense level of 21 and a Criminal History Category of I, the Guideline range for imprisonment is 37 to 46 months.

The Guideline range for a term of supervised

release is at least one but not more than three years,
pursuant to § 5D1.2(a)(2). Because the applicable Guideline
range is in Zone D of the Sentencing Table, the Defendant
is not eligible for probation, pursuant to § 5B1.1,
application note #2.

The fine range for the instant offense is from
$7,500 to $75,000, pursuant to § 5E1.2(c)(3)(A) and (c)(4).
Subject to the defendant's ability to pay, in imposing a
fine, the Court shall consider the expected costs to the
Government of any imprisonment, probation, or supervised
release pursuant to §5E1.2(d)(7). The most recent advisory
from the Administrative Office of the United States Courts
suggests a monthly cost of $2,412.33 to be used for
imprisonment, a monthly cost of $278.95 for supervision,
and a monthly cost of $2,244.17 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this
Court also gives due consideration to the remaining factors
identified in 18 U.S.C. § 3553(a) to impose a sentence
"sufficient, but not greater than necessary," as is
required by the Supreme Court's decision in Booker, 543

13

U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For Count 2, Defendant will be sentenced to 37 months' imprisonment to be followed by 3 years' supervised release.

As mandatory conditions of his supervised release: (1) the Defendant shall not commit another federal, state or local crime; (2) the Defendant shall not illegally possess a controlled substance; (3) the Defendant shall not possess a firearm or destructive device; (4) the Defendant shall refrain from any unlawful use of a controlled substance and shall submit to one drug test within fifteen (15) days of placement on probation or

14

supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer; and (5) the Defendant shall cooperate in the collection of DNA as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13) shall be imposed with the additional special conditions:

(1) The Defendant shall participate in an alcohol aftercare treatment program under a co-payment plan, which may include testing via breathalyzer at the direction and discretion of the probation officer.

(2) The Defendant shall submit his person, residence, place of business, vehicle or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

15

The Defendant is to report to the nearest Probation Office within 72 hours of release from custody. The Defendant shall be supervised by the district of residence.

It does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

It is further ordered that the Defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

The Defendant has been detained without bail since his arrest. He is not a candidate for voluntary surrender because of the provisions found in 18 U.S.C. § 3143(a)(2).

16

The terms of this sentence are subject to modification at the sentencing hearing scheduled for March 20, 2014.



It is so ordered.

New York, NY
February    , 2014

_____
ROBERT W. SWEET
U.S.D.J.